# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01897-PAB-NRN

ROBERT LEWANDOWSKI,

   Plaintiff,

v.

THE CITY OF LONGMONT, a Colorado municipality; and
OFFICER STEPHEN DESMOND, in his official and individual capacity,

   Defendants.

## AMENDED COMPLAINT

Plaintiff Robert Lewandowski, by and through his undersigned attorney, for his Amended Complaint, hereby states and alleges as follows:

## PARTIES

1. From at least February 6, 2018 through July 30, 2021, Plaintiff Robert Lewandowski ("Mr. Lewandowski" or "Plaintiff"), was subject to criminal investigation and legal proceedings in Boulder County, Colorado as a result of falsified evidence and multiple felony charges that were brought against him based upon false information.

2. On July 30, 2021, Mr. Lewandowski was acquitted of all charges after a criminal trial in Boulder County, Colorado.

3. Defendant City of Longmont ("Longmont") is a government municipality created under the laws of the State of Colorado and is subject to liability under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) and its progeny.

1

4. Defendant Stephen Desmond was at all material times a police officer with Longmont and is a person subject to liability under 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

5. Plaintiff's various civil rights claims under 42 U.S.C. § 1983 give rise to subject matter jurisdiction in this Court pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and § 1343(a)(4) (civil rights).

6. Venue in this action properly lies in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391, as all defendants, upon information and belief, reside and/or are located in this federal judicial district, and the events giving rise to this action took place in Boulder County, Colorado, within this district.

## GENERAL ALLEGATIONS – FACTUAL BACKGROUND

7. On January 29, 2019, Mr. Lewandowski had an approximately two minute long phone with Defendant Desmond, his first ever contact with this Defendant regarding criminal allegations against him.

8. Days later, on February 4, 2019, Defendant Desmond obtained a warrant for the arrest of Mr. Lewandowski. By this point, Defendant Desmond did not have any additional communications with Mr. Lewandowski beyond a single two minute phone call.

9. The arrest warrant for Mr. Lewandowski contained allegations regarding alleged financial crimes purported to have been committed by Mr. Lewandowski against his mother, Emily Cebo.

10. The arrest warrant prepared by Defendant Desmond contained various criminal allegations against Mr. Lewandowski, including, but not limited to, that (i) Mr. Lewandowski stole stock from his mother; (ii) that Mr. Lewandowski changed his mother's

will making him sole beneficiary; (iii) that Mr. Lewandowski "made himself" a Power of Attorney document; and (iv) that Mr. Lewandowski stole cash and other funds from his mother's bank accounts.

11. Months earlier, on April 4, 2018, Mr. Lewandowski's sister, Irene Kantrowitz, had informed Defendant Desmond that Mr. Lewandowski never stole stock from his mother, which is reflected in a supplemental police report.

12. Yet, ten months later, on February 4, 2019, Defendant Desmond ignored this exculpatory statement and pursued this claim against Mr. Lewandowski anyway, stating – falsely – in the arrest warrant and affidavit that Mr. Lewandowski stole stock from his mother.

13. Similarly, on April 4, 2018, Irene Kantrowitz informed Defendant Desmond that her mother's will was not changed to make Plaintiff the sole beneficiary, as it is reflected in a supplemental police report that: "Upon further questioning, [Irene] stated she does not believe the will has been changed . . ."

14. Again, ten months later, Defendant Desmond's arrest warrant and affidavit falsely stated that Mr. Lewandowski changed his mother's will to make himself the sole beneficiary.

15. At all material times, Defendant Desmond was aware that Mr. Lewandowski had a valid Power of Attorney with his mother to assist her with her finances, including paying her bills, yet ignored Mr. Lewandowski's authority granted by this document and instead pursued criminal allegations against him.  On or about January 29, 2019, days before obtaining the arrest warrant, Defendant Desmond talked with attorney, Peter Somma, who Emily Cebo had hired to create her Power of Attorney naming her son,

Robert Lewandowski (the Plaintiff) her Power of Attorney.

16. At all material times, Defendant Desmond never interviewed Mr. Lewandowski (beyond an initial two minute long phone call) prior to bringing criminal charges against him. During this initial phone call, Mr. Lewandowski requested that Defendant Desmond come see him and get his side of the story. Rather than engage in a typical investigation, Defendant Desmond raised his voice at Mr. Lewandowski and threatened that he would just get a warrant for his arrest. Defendant Desmond was not professional or courteous towards Mr. Lewandowski, so Mr. Lewandowski ended the call.

17. At all material times, Defendant Desmond alleged that Mr. Lewandowski illegally transferred funds from his mother's Wells Fargo account.

18. Defendant Desmond failed to investigate transfers to or from the subject Wells Fargo account, otherwise he would have known that there were no transfers made to Mr. Lewandowski, and that Wells Fargo "Bill Pay" service was being used to pay Mr. Lewandowski's mother's bills.

19. Upon information and belief, Wells Fargo's "Bill Pay" service is not used to transfer funds between bank accounts, rather it is used to issue checks to third parties to pay bills, for example. *See* wellsfargo.com/online-banking/bill-pay (last accessed Nov. 29, 2023).

20. Defendant Desmond also alleged that Plaintiff stole money from a Capital One joint account with his mother.

21. At all material times, Mr. Lewandowski did not have a Capital One joint account with his mother; he had his own individual Capital One account which did not contain any of his mother's funds. Indeed, the supplemental police reports authored prior

to the arrest warrant affidavit, do not show any joint Capital One accounts, only that Emily Cebo and Mr. Lewandowski had separate Capital One accounts.

22. However, in Defendant Desmond's arrest warrant affidavit, he falsely refers multiple times to joint Capital One accounts between Emily Cebo and Mr. Lewandowski, ignoring the actual Capital One statements that were provided to him under a court-ordered record request.

23. Upon information and belief, Capital One never alerted Emily Cebo, Irene Kantrowitz, Mr. Lewandowski, or any other members of his family, about any type of alleged 'fraud' or other malfeasance, because it never occurred. Rather, Irene Kantrowitz had gone to Capital One on February 6, 2018 and claimed fraud, stating Mr. Lewandowski's Power of Attorney was not valid. As a result, Capital One froze all of Emily Cebo's and Mr.Lewandowski's Capital One accounts. After Capital One's investigation, however, the bank determined there was no fraud and unfroze the accounts. Irene Kantrowitz shared these made-up stories with Defendant Desmond who ran with them, regardless of the wholesale absence of supporting facts.

24. At all material times, Defendant Desmond failed to investigate the allegations made against Mr. Lewandowski.

25. At all material times, Defendant Desmond failed to formally interview Mr. Lewandowski regarding the allegations against him, beyond an initial two-minute phone call on January 29, 2019.

26. At all material times, Defendant Desmond never obtained corroborating evidence to support the allegations against Mr. Lewandowski. Defendant Desmond never interviewed Mr. Lewandowski about the details of the allegations against him.

27. At all material times, Defendant Desmond used the legal process to subject Mr. Lewandowski to criminal prosecution and, eventually, a criminal trial.

28. At all material times, Defendant Desmond failed to consider exculpatory evidence in his possession, such as statements made in 2018 and 2019 when pursuing their allegations against Mr. Lewandowski.

29. At all material times, Defendant Desmond affirmatively included multiple false statements in his arrest affidavit, as detailed above, and which he knew or should have known were false based on the information contained within his own supplemental police reports.

30. At all material times, Defendants' criminal allegations and criminal charges against Mr. Lewandowski were not based on any objective means of determining Mr. Lewandowski's criminal liability, if any.

31. After the arrest warrant was issued against Mr. Lewandowski, he was charged with multiple felony crimes, and a criminal case was opened under Case No. 2019CR0210.

32. A criminal trial against Mr. Lewandowski began on July 26, 2021, in Boulder County District Court.

33. From July 26, 2021, through July 30, 2021, Mr. Lewandowski defended the criminal charges against him at trial in Boulder County, Colorado.

34. On July 30, 2021, Mr. Lewandowski was acquitted of all charges.

35. On August 25, 2021, Mr. Lewandowski contacted the Longmont Police Department to file a criminal complaint against his sister, Irene Kantrowitz, for making false statements to law enforcement.

36. As part of these communications, post-acquittal, Mr. Lewandowski spoke with Officer Alan Baldivia of the Longmont Police Department.

37. On August 26, 2021, Officer Baldivia called Mr. Lewandowski and informed him that his complaint would not be investigated because the Longmont Police Department deemed it a civil matter.

38. In fact, making false reports to law enforcement is a criminal offense under C.R.S. § 18-8-111.

39. Despite Ms. Kantrowitz's criminal activity by making false statements to law enforcement, and her testimony at Mr. Lewandowski's trial, Officer Baldivia chose not to do anything with Mr. Lewandowski's allegations against Ms. Kantrowitz.

40. After Officer Baldivia failed to investigate these crimes, Mr. Lewandowski opened a complaint with the Longmont Professional Standards Unit ("PSU").

41. In response to Mr. Lewandowski's complaint to the PSU, Defendant Longmont simply ignored it, and, upon information and belief, (i) failed to investigate any allegations in that complaint, (ii) failed to speak to any relevant witnesses, and (iii) failed to collect any evidence that may have supported Mr. Lewandowski's allegations. In sum, Longmont allowed Officer Baldivia to simply ignore past criminal behavior and continue its history, pattern and practice of failing to investigate criminal allegations.

42. Since the investigation against Mr. Lewandowski began in or around February 2018, followed by a criminal trial against him and his subsequent acquittal in July 2021, he has suffered losses and damages, including, but not limited to, legal fees and attorneys' fees, legal expenses, legal costs, court costs and fees, unnecessary travel to and from Colorado, interruptions to his daily life, damage to his reputation, emotional

distress, and other losses and damages to be determined by a jury and the Court.

## FIRST CLAIM FOR RELIEF

## 42 U.S.C. § 1983 AGAINST DEFENDANT DESMOND (MALICIOUS PROSECUTION)

43. Plaintiff incorporates by reference paragraphs 1 through 42 of this Amended Complaint.

44. The Fourteenth Amendment of the U.S. Constitution provides that state actors may not "deprive any person of life, liberty or property, without due process of law . . . ."

45. Section 1983 of the Civil Rights Act of 1871 (42 U.S.C. § 1983) imposes liability on persons who, under color of law, deprive individuals of the rights secured by the Constitution:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress . . . .

46. This claim arises under 42 U.S.C. § 1983 against Defendant Desmond for the falsification of charges and evidence against Mr. Lewandowski.

47. The actions of Defendant Desmond before, during and after his flawed criminal investigation, as detailed above in this Amended Complaint, and including (i) failing to investigate the allegations against Mr. Lewandowski, (ii) failing to properly review bank statements alleged to contain illegal transfers, (iii) failing to interview Mr. Lewandowski beyond a negligible two minute phone call, (iv) failing to corroborate testimony against Mr. Lewandowski, (v) intentionally and knowingly including false

8

statements in his arrest warrant affidavit, and (vi) maliciously charging Mr. Lewandowski with multiple felony crimes based, at least in part, on evidence that Defendant Desmond knew was false, constituted state action under the color of law that violated Mr. Lewandowski's constitutional rights.

48. The actions of Defendant Desmond constituted a seizure under the Fourth Amendment, and a denial of Mr. Lewandowski's right to due process under the Fourteenth Amendment.

49. As a direct result of the aforementioned constitutional violations, Mr. Lewandowski suffered serious injuries and damages.

50. For the foregoing deprivations of Mr. Lewandowski's constitutional rights, Defendants are liable for compensatory and punitive damages as well as reasonable attorneys' fees and costs under 42 U.S.C. § 1988 in an amount to be proven at trial.

WHEREFORE, on the First Claim for Relief, Plaintiff demands judgment against Defendants jointly and severally as follows: (1) compensatory damages sufficient to fully and fairly compensate Plaintiff for his injuries and damages, in an amount to be determined at trial; (2) an award of exemplary damages in an amount to be determined at trial; (3) reasonable attorneys' fees and costs under 42 U.S.C. § 1988; (4) interest from the date of injury or to the maximum extent allowed by law; (5) costs, including expert witness fees and deposition expenses; and (6) such other and further relief as the Court deems just.

## SECOND CLAIM FOR RELIEF

## 42 U.S.C. § 1983 AGAINST DEFENDANT CITY OF LONGMONT

## (FAILURE TO TRAIN AND SUPERVISE and VICARIOUS LIABILITY)

51. Plaintiff incorporates by reference paragraphs 1 through 50 of this Amended Complaint.

52. This claim, and the allegations that follow, is brought against Defendant City of Longmont ("Longmont") in its official capacity as a state actor.

53. Longmont is subject to *respondeat superior* or vicarious liability under 42 U.S.C. § 1983, and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) and its progeny.

54. At all material times, Longmont, through its leadership and executive management, was the final policymaker for the City of Longmont Police Department and was responsible for the practices of the Longmont Police Department and the training and supervision of its police officers. There may have been other policymakers who were responsible for policies, practices, training, and supervision within the City of Longmont and/or Longmont Police Department. Longmont also may have established, or failed to establish, policies and customs through other policymakers.

55. Municipal liability can attach under *Monell* for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

56. Longmont is liable for inadequate policies, customs, training, and supervision which resulted in the violations of the constitutional rights of Mr. Lewandowski.

57. At all material times, Longmont acted as a state actor and under color of the laws of the State of Colorado.

58. As described throughout this Amended Complaint, the actions of Defendant

Desmond against Mr. Lewandowski exceeded constitutional limitations and violated Mr. Lewandowski's clearly established rights under the Fourth Amendment to the U.S. Constitution.

59. The actions of Defendant Desmond in falsifying evidence, accusations, and charges against Mr. Lewandowski, and failing to properly investigate the allegations against Mr. Lewandowski, violated Mr. Lewandowski's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

60. Longmont directed or had actual knowledge of and acquiesced in the violations of Mr. Lewandowski's constitutional rights.

61. Longmont's training and supervision of Defendant Desmond, through its police department, regarding proper investigations of criminal allegations, the duty not to use false evidence and false allegations, and the duty not to withhold exculpatory evidence, was grossly inadequate.

62. The defendant police offers' actions and inactions were the result of the training and supervision, or lack thereof, provided by Longmont.

63. Longmont had actual or constructive notice that its failures to properly train and supervise its police officers were substantially certain to result in a violation of clearly established constitutional rights based on similar incidents and a pattern of police conduct. For example, Officer Baldivia, like Defendant Desmond, similarly failed to investigate Mr. Lewandowski's complaint against his sister, Ms. Kantrowitz, after the conclusion of his trial.

64. Longmont had actual or constructive notice that the failures to properly train and supervise deputies were substantially certain to result in a violation of clearly

established constitutional rights because such a constitutional violation was a plainly obvious consequence of the failures to properly train and supervise police officers in the skills necessary to handle recurring situations similar to the investigation, arrest and prosecution of Mr. Lewandowski.

65. The need for more or different training or supervision was so obvious, and so likely to result in a violation of constitutional rights, that Longmont can reasonably be said to have been deliberately indifferent to the need and to the clearly established constitutional rights of persons with whom Defendant Desmond came into contact.

66. Longmont's inadequate policies and customs, and failures to properly train and supervise its police officers, were a direct and proximate cause of the police offers' violations of Mr. Lewandowski's clearly established constitutional rights.

67. As a direct result of Longmont's inadequate policies and customs, and failures to properly train and supervise its police officers, and the resulting violations of his constitutional rights, Mr. Lewandowski suffered serious injuries and damages.

68. For the foregoing deprivations of Mr. Lewandowski's constitutional rights, Longmont is jointly liable with the police officers for compensatory and punitive damages as well as reasonable attorneys' fees and costs under 42 U.S.C. § 1988 in an amount to be proven at trial.

WHEREFORE, on the Second Claim for Relief, Plaintiff demands judgment against Defendant City of Longmont as follows: (1) compensatory damages sufficient to fully and fairly compensate Plaintiff for his injuries and damages, in an amount to be determined at trial; (2) an award of exemplary damages in an amount to be determined at trial; (3) reasonable attorneys' fees and costs under 42 U.S.C. § 1988; (4) interest from

the date of injury or to the maximum extent allowed by law; (5) costs, including expert witness fees and deposition expenses; and (6) such other and further relief as the Court deems just.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury with respect to each of his claims alleged herein.

DATED this 30th day of November, 2023.

*s/ Jesse D. Rodgers*
Jesse D. Rodgers
CommonSpirit Health
198 Inverness Drive West, 4th Fl.
Englewood, Colorado 80112
Tel.: (720) 874-1308
jesse.rodgers@commonspirit.org
*Attorney for Plaintiff*

*s/ Robert Lewandowski*
Robert Lewandowski
5304 Pony Chase
Austin, Texas 78727
Tel.: (512) 689-8822
DefendingCivilRights@gmail.com
*Plaintiff pro se*

**Plaintiff's Name and Address:**
Robert Lewandowski
5304 Pony Chase
Austin, Texas  78727

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of November, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all known counsel of record.

*s/ Jesse D. Rodgers*